IN THE MATTER OF: NICOLE HOPE YOCUM, A JUVENILE

No. COA02-582

(Filed 3 June 2003)

### 1. Termination of Parental Rights— neglect—clear, cogent, and convincing evidence

The trial court did not err in a termination of parental rights case by concluding that clear, cogent, and convincing evidence existed to show that respondent father neglected his minor child as set forth under N.C.G.S. § 7B-1111(a)(1), because: (1) respondent never paid any child support for the minor child and did not send the minor child any gift or other type of acknowledgment on her birthday; (2) although respondent contends he could not afford to care for the minor child while incarcerated, the evidence showed that he has only been incarcerated for a portion of the minor child's life, has maintained employment, and has never given any monetary support to the minor child; (3) respondent had limited contact with the minor child since her birth; and (4) respondent had the opportunity to provide gifts to the minor child through a charitable program for inmates at no personal expense, but failed to participate in the program.

### 2. Termination of Parental Rights— abandonment—clear, cogent, and convincing evidence

Although respondent father contends the trial court erred in a termination of parental rights case by concluding that clear, cogent, and convincing evidence existed to show that respondent father abandoned his child, this assignment of error need not be addressed because: (1) the trial court's findings and conclusions regarding neglect were upheld; and (2) a finding of any one of the enumerated termination grounds is sufficient to support the order of the trial court.

### 3. Termination of Parental Rights— findings of fact—prevented from exercising parental responsibilities

The trial court did not err in a termination of parental rights case by omitting findings of fact that petitioner mother prevented respondent father from exercising his parental responsibilities with the minor child, because: (1) respondent's testimony revealed that petitioner allowed him to schedule visits which he failed to keep; and (2) while evidence may have been presented

to support a finding that petitioner prevented respondent from visiting the minor child, the trial court was not required to specifically so find.

**4. Termination of Parental Rights— best interests of child— abuse of discretion standard**

The trial court did not abuse its discretion by concluding that it was in the best interests of the minor child to terminate respondent father's parental rights, because: (1) the evidence reflected that respondent demonstrated a pattern of neglect toward the minor child and petitioner maintained that she could not care for the minor child; and (2) it was within the trial court's discretion to conclude that the child's best interests would be served by terminating respondent's parental rights so that adoption could take place.

Judge TYSON dissenting.

Appeal by respondent from order entered 17 October 2001 by Judge Charles Brown in Rowan County District Court. Heard in the Court of Appeals 29 January 2003.

*Sofie W. Hosford for respondent appellant.*

*Charles W. Porter for petitioner appellee.*

TIMMONS-GOODSON, Judge.

Adam Jermaine Austin ("respondent") appeals the order terminating his parental rights as to his daughter, Nicole Hope Yocum ("the minor child"). For the reasons stated herein, we affirm the order of termination by the trial court.

The facts pertinent to the instant appeal are as follows: Respondent and Brenda Lee Yocum ("petitioner") are the natural parents of the minor child. Respondent and petitioner have never married. Prior to the birth of the minor child, respondent and petitioner sought pre-adoption counseling; however, respondent rejected the idea of adoption. On 13 February 1999, the minor child was born in Rowan County.

On 5 June 2001, petitioner filed a petition to terminate the parental rights of respondent. The petition alleged that respondent failed to establish paternity, failed to support the minor child, abandoned the minor child and failed to communicate with the minor

child. The matter came before the trial court on 24 September 2001. Respondent appeared and was represented by counsel at the termination hearing. Based on the evidence presented at the hearing, the trial court made the following pertinent findings of fact:

7. Respondent Father, Adam Austin, is 28 years old, incarcerated in North Carolina Department of Corrections for multiple consecutive sentences of Felony Breaking and Entering and has a projected release date of December 25, 2006. He has previously been incarcerated in North Carolina Department of Corrections in 1995 and released in January, 1997 without benefit of early release after having served a full term for Felony Indecent Liberties with a child and multiple probation violations.

. . . .

9. The father has been employed:

a. while incarcerated, from May, 2001 to present on a road crew and earned 70 cents per day, 5 days per week; all moneys were used for his personal expenses. None of these moneys were applied in direct cash toward support of the child nor was any of it used as a resource to make any telephone, US Mail or any other contact with the child.

b. while incarcerated, February, 2001 to May, 2001 in the prison kitchen and earned 40 cents per day, 5 days per week; all moneys were used for his personal expenses. None of these moneys were applied in direct cash toward support of the child nor was any of it used as a resource to make any telephone, US Mail or any other contact with the child.

c. for two months duration prior to incarceration on February 1, 2000 at Draftex Corporation. Prior to Draftex, he was employed at Superior Lawn Service. Prior to Superior Lawn Service, he was employed at Applebee's restaurant for approximately one year. At all three of the above jobs, he earned a paycheck every two weeks. The exact amount is unknown but he was able to meet his ongoing expenses of rent, food and clothing. None of these moneys were applied in direct cash toward support of the child nor was any of it used as a resource to make any telephone, US Mail or any other contact with the child.

10. He was consistently employed from 02-13-99 to his incarceration on 02-01-00. While incarcerated he was employed in the

kitchen from February, 2001 to May, 2001 and a road crew from May, 2001 to the present. All income received was used for his personal expenses. From birth, 02-13-99 to the time of trial, Respondent Father never paid any cash monetary support to the child or to the mother for the child's benefit.

11. A Voluntary Support Agreement for $189 per month was entered into by the Respondent Father on January 13, 2000 and no money has ever been paid pursuant to that Agreement.

12. The Respondent Father, accompanied by the paternal grandmother, visited the child and mother on at least 4 occasions but no more than 5 occasions at the Rockwell residence with maternal grandmother present. Each visit lasted no longer than 30 minutes. On the first two visits during the 1st month of the child's life, the Respondent Father brought clothing and blankets for the child. Respondent Father never brought any goods in kind after that.

13. The Respondent Father telephoned the mother and maternal grandmother to make arrangements for additional visits. The father acknowledged that after setting up the additional visits, he did not show up for them because of transportation conflicts.

14. The paternal grandmother telephoned the mother and maternal grandmother prior to the respondent's incarceration to set up her own visits with the child and suggested Walmart or K-Mart as a potential location. No agreement was reached for those visits.

15. Respondent Father acknowledged that he failed to communicate with the child by acknowledging that he never mailed any cards, letters nor gifts to the child on her birthday, Christmas, other special occasion or at any time since birth to the time of trial, a period of 2 years and 7 months, nor did he communicate in any other way with the child since birth.

16. Respondent Father never gave any presents for the child through the Angel Program, a charitable program that provides inmates the opportunity to send Christmas Presents to their children, nor any other Charitable program even though the Angel Program was available to him.

17. The mother has signed a consent for adoption, and has consistently desired to place the child for adoption because she feels

the child needs both a mother and father. The mother acknowledges she cannot raise the child by herself.

18. Alternatives to adoption have been explored by the mother by placing the child with her brother in Texas for several months.

19. The mother has received Government Aid in the form of Food Stamps and Medicaid to assist her financially with the child from birth to the present.

20. In the last 2 months before trial, the Paternal Grandmother has left notes at the mother's Salisbury address for the purpose of establishing visitation for herself. Respondent father has placed 2 collect phone calls to the mother.

Based on the above-stated findings, the trial court entered the following conclusions of law:

4. Respondent Father has willfully and intentionally evinced a settled purpose to forego all parental duties and has relinquished all parental claims to his child.

5. Respondent father has willfully neglected and refused to perform the natural and legal obligations of parental care and support. He has withheld his presence, his love, his care, the opportunity to display filial affection and has willfully neglected to lend any support or maintenance for the child.

6. Grounds exist to terminate the parental rights of the respondent father in that he has abandoned this child pursuant to NCGS 7B-1111(a)7.

7. The child does not receive the proper care, supervision nor discipline from the Respondent father.

8. The Respondent Father has not provided necessary medical care or remedial care.

9. Grounds exist to terminate the parental rights of the respondent father in that he has neglected the child pursuant to NCGS 7B-1111(a)1.

10. It is in the best interests of the child for the Respondent Father's parental rights to be terminated as the mother has consistently felt that this child needed both a mother and father to raise the child, has acknowledged that she cannot raise the child herself and has consented to adoption.

**IN RE YOCUM**

[158 N.C. App. 198 (2003)]

The trial court therefore terminated respondent's parental rights to the minor child. Respondent appeals.

Respondent presents four assignments of error on appeal, arguing that (1) there was not clear, cogent and convincing evidence that respondent neglected the minor child; (2) there was not clear, cogent and convincing evidence that respondent abandoned the minor child; (3) the trial court omitted a finding of fact that petitioner prevented respondent from having contact with the minor child; and (4) the trial court abused its discretion by concluding that it was in the best interest of the minor child to terminate respondent's parental rights.

[1] In his first assignment of error, respondent contends that there was not clear, cogent and convincing evidence that he neglected the minor child, and that the trial court therefore erred in otherwise finding. We disagree.

A proceeding for termination of parental rights involves two stages: (1) the adjudicatory stage, governed by section 7B-1109, and (2) the dispositional stage, governed by section 7B-1110. *See* N.C. Gen. Stat. §§ 7B-1109, 7B-1110 (2001); *In re Huff*, 140 N.C. App. 288, 290, 536 S.E.2d 838, 840 (2000), *disc. review denied*, 353 N.C. 374, 547 S.E.2d 9 (2001). At the adjudication stage, the petitioner must show by "clear, cogent and convincing evidence" the existence of one or more of the statutory grounds for termination of parental rights set fourth in section 7B-1111. N.C. Gen. Stat. § 7B-1109(e) and (f) (2001); *In re Montgomery*, 311 N.C. 101, 110, 316 S.E.2d 246, 252 (1984). The clear, cogent and convincing evidentiary standard is a greater standard than the preponderance of the evidence standard, but not as rigorous as the proof beyond a reasonable doubt requirement. *See In re Montgomery* at 109-10, 316 S.E.2d at 252. The trial court may terminate the parental rights on the basis of several grounds, and "[a] finding of any one of the . . . separately enumerated grounds is sufficient to support a termination." *In re Pierce*, 67 N.C. App. 257, 261, 312 S.E.2d 900, 903 (1984). In a termination proceeding, this Court "should affirm the trial court where the court's findings of fact are based upon clear, cogent and convincing evidence and the findings support the conclusions of law." *In re Allred*, 122 N.C. App. 561, 565, 471 S.E.2d 84, 86 (1996).

In the case at bar, the trial court found and concluded that respondent neglected the minor child as set forth in section 7B-1111(a)(1) of the North Carolina General Statutes. Under this section a "neglected" juvenile is defined as follows:

A juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law.

N.C. Gen. Stat. § 7B-101(15) (2001). In determining whether neglect has occurred, "the trial judge may consider . . . a parent's complete failure to provide the personal contact, love, and affection that [exists] in the parental relationship." *In re Apa*, 59 N.C. App. 322, 324, 296 S.E.2d 811, 813 (1982).

Here, the evidence showed, and the trial court found, that respondent neglected the minor child's welfare, in that he never paid any child support for the minor child and did not send the minor child any gift or other type of acknowledgment on her birthday. Respondent maintains that he could not afford to care for the minor child while incarcerated; however, the evidence shows that he has only been incarcerated for a portion of the minor child's life, has maintained employment, and has never given any monetary support to the minor child. Moreover, respondent had limited contact with the minor child since her birth, which consisted of no more than five visits. We further note that respondent had an opportunity to provide gifts to the minor child through a charitable program for inmates at no personal expense, but failed to participate in the program. We hold that grounds for termination of respondent's parental rights under section 7B-1111(a)(1) were established by clear, cogent, and convincing evidence. Respondent's first assignment of error is overruled.

[2] By his second assignment of error, respondent argues that the trial court committed error in finding that he abandoned the minor child. Respondent contends that there was not clear, cogent, and convincing evidence that he abandoned the minor child, because petitioner prevented him from maintaining a parental relationship with the minor child.

Because we have upheld the trial court's findings and conclusion regarding neglect, we need not address respondent's assignment of error contesting termination based on abandonment. A finding of any one of the enumerated termination grounds is sufficient to support the order of the trial court. *In re Taylor*, 97 N.C. App. 57, 64, 387 S.E.2d 230, 233-34 (1990).

**IN RE YOCUM**

[158 N.C. App. 198 (2003)]

**[3]** In his third assignment of error, respondent argues that the trial court omitted findings of fact that petitioner prevented him from exercising his parental responsibilities with the minor child. Specifically, respondent contends that petitioner's behavior prevented he and his family from visiting the minor child.

Findings of fact are conclusive on appeal if supported by competent evidence, even when there is evidence to the contrary. *In re Williamson*, 91 N.C. App. 668, 674, 373 S.E.2d 317, 320 (1988). In the case *sub judice*, respondent gave the following testimony on cross-examination:

Q: Did you ever make arrangements to visit and then not show up?

A: Yes, because of transportation.

. . . .

Q: . . . And when you called to set up those visits, did you ever actually set the visits up?

A: Yes, most of the time.

Q: And did you show up for all of them?

A: No, I didn't.

Q: And are you saying now that it's transportation again?

A: Yes

Q: Okay. How many times did you not show up?

A: I don't recall.

Respondent's testimony reveals that petitioner allowed him to schedule visits which he failed to keep. While evidence may have been presented to support a finding that petitioner prevented respondent from visiting the minor child, the trial court was not required to specifically so find. There was sufficient evidence as set forth above to support the finding by the trial court that respondent failed to appear after scheduling visits with the minor child. Thus, the trial court did not err.

**[4]** In his final assignment of error, respondent argues that the trial court abused its discretion in concluding that it was in the best interests of the minor child to terminate respondent's parental rights. We disagree.

IN RE YOCUM

[158 N.C. App. 198 (2003)]

"Once the court has determined that grounds for terminating parental rights are present, the court then 'moves to the disposition stage to determine whether it is in the best interests of the child to terminate the parental rights.' " *In re Leftwich*, 135 N.C. App. 67, 71, 518 S.E.2d 799, 802 (1999) (quoting *In re Young*, 346 N.C. 244, 247, 485 S.E.2d 612, 615 (1997)). The trial court's decision to terminate parental rights is reviewed on an abuse of discretion standard. *See In re Brim*, 139 N.C. App. 733, 745, 535 S.E.2d 367, 374 (2000); *see also In re Allred*, 122 N.C. App. at 569, 471 S.E.2d at 88.

The evidence reflects that respondent demonstrated a pattern of neglect toward the minor child and petitioner maintained that she could not care for the minor child. It was well within the trial court's discretion to conclude that the child's best interests would be served by terminating respondent's parental rights so that adoption could take place. We therefore hold that the trial court did not abuse its discretion in terminating respondent's parental rights.

In conclusion, we hold that the trial court did not err in terminating respondent's parental rights to the minor child. The order of the trial court is therefore

Affirmed.

Judges LEVINSON concurs.

Judge TYSON dissents.

TYSON, Judge, dissenting.

I respectfully dissent from the majority's opinion affirming the trial court's termination of respondent's parental rights. The trial court concluded that respondent had abandoned and neglected the child, and grounded its decision to terminate pursuant to N.C. Gen. Stat. § 7B-1111(a)(7) and N.C. Gen. Stat. § 7B-1111(a)(1). I do not find clear, cogent, and convincing evidence in the record to support the trial court's findings of fact and its conclusions of law. I would remand to the trial court for further findings of fact.

The "parental liberty interest 'is perhaps the oldest of the fundamental liberty interests' the United States Supreme Court has recognized." *Owenby v. Young*, 357 N.C. 142, 144, 264 S.E.2d 264, 266 (2003) (quoting *Troxel v. Granville*, 530 U.S. 57, 65, 147 L. Ed. 2d 49, 56 (2000)). The clear, cogent, and convincing evidence standard is

"greater than the preponderance of the evidence standard required in most civil cases" and safeguards this liberty interest. *In re Montgomery*, 311 N.C. 101, 109-10, 316 S.E.2d 246, 252 (1984). This standard has been defined as evidence "which should fully convince." *Williams v. Building & Loan Asso.*, 207 N.C. 362, 364, 177 S.E. 176, 177 (1934).

I find substantial evidence supports respondent's contention that petitioner, who waived her parental visits with respect to the minor child before the hearing, interfered in the respondent's relationship with his daughter. Petitioner kept written records of the times respondent called and visited his daughter. These records show respondent communicated with petitioner at least twenty times during a period of nine months prior to his incarceration. Respondent also visited with his daughter four or five times during the year between her birth and his incarceration. Respondent and his mother called petitioner at her mother's home to schedule times to visit his daughter. They were informed on numerous occasions by petitioner or her mother not to visit or were discouraged from visiting. Petitioner secreted the child by sending her to live with her brother in Texas for six months during respondent's incarceration. After petitioner moved out of her mother's home and during respondent's incarceration, respondent's mother traveled to petitioner's home to visit her granddaughter several times, visiting once and leaving notes for petitioner the other times.

There is no dispute that respondent and his mother brought clothes and blankets for his daughter. Record evidence shows respondent and his mother offered petitioner money and other items to support the daughter that were refused by petitioner. Petitioner's behavior evidences an intent to shut respondent out of his daughter's life. Neither the trial court's order nor the majority's opinion accounts for either this interference or its effect on respondent's ability for parental involvement. The trial court's order makes no findings of fact in this regard.

The statute requires a finding of existing neglect at the time of the hearing to terminate parental rights on that ground. *In re Ballard*, 311 N.C. 708, 716, 319 S.E.2d 227, 232 (1984). The trial court failed to make a finding of existing neglect at the time of its order. The trial court relied upon its findings that while incarcerated respondent had not written his daughter, arranged for her to receive Christmas gifts through the prison's Angel Program, or paid any child support to petitioner. Incarceration, standing alone, is neither a sword nor a shield

DRAUGHON v. HARNETT CTY. BD. OF EDUC.

[158 N.C. App. 208 (2003)]

in a termination of parental rights decision. *See In re Maynor*, 38 N.C. App. 724, 248 S.E.2d 875 (1978). Respondent's severely limited income prevented him from providing support to his daughter. After reviewing all competent evidence in the record, I fail to find clear, cogent, and convincing evidence to support the finding of neglect existing as of the date of the hearing.

Respondent's mother has been certified as a foster parent with the Department of Social Services for five years and is willing to provide a home for the child. The trial court failed to consider any placement possibility with the child's natural family. I would vacate the trial court's termination of respondent's parental rights and remand this case for further findings of fact based upon the clear, cogent, and convincing evidence in the record. I respectfully dissent.