IN THE MATTER OF: Q.A.K.
No. COA09-255.
Court of Appeals of North Carolina.
Filed August 4, 2009.
This case not for publication.
Thomas W. Jordan, Jr., Deputy County Attorney, for petitioner-appellee Durham County Department of Social Services.
Christy Hamilton Malott for Guardian ad Litem.
Lucas & Ellis, PLLC, by Anna S. Lucas, for respondent-appellant.
STEELMAN, Judge.
Where respondent previously had her parental rights to another child involuntarily terminated and lacks the ability or willingness to establish a safe home for her child, the trial court properly terminated her parental rights based upon N.C. Gen. Stat. § 7B-1111(a)(9).

I. Factual and Procedural Background
Respondent is the biological mother of Q.A.K. On 25 January 2008, Durham County Department of Social Services (DSS) filed a juvenile petition alleging Q.A.K. was a neglected and dependent juvenile. On 1 February 2008, DSS was granted nonsecure custody. The matter came on for hearing on 12 March 2008. Respondent failed to appear at the adjudication hearing. The trial court adjudicated Q.A.K. a neglected and dependent juvenile, and placed him in the custody of DSS. A disposition hearing was scheduled for 8 April 2008. At that hearing, legal custody was placed with DSS, and respondent was allowed visitation. Respondent was ordered to receive a full psychological evaluation and substance abuse treatment.
A review hearing was held on 8 July 2008. At the time of the review hearing, respondent was not in compliance with the trial court's order. The trial court suspended visitation and relieved DSS of reunification efforts. The matter was reviewed again on 5 August 2008. At that time, the trial court changed the permanent plan for Q.A.K. to adoption.
On 19 September 2008, DSS filed a motion for termination of parental rights alleging respondent: (1) neglected the child under N.C. Gen. Stat. § 7B-1111(a)(1); (2) willfully abandoned the child for at least six consecutive months immediately preceding the filing of the petition under N.C. Gen. Stat. § 7B-1111(a)(7); and (3) had her parental rights to another child involuntarily terminated by a court, and she lacked the ability or the willingness to establish a safe home under N.C. Gen. Stat. § 7B-1111(a)(9). A hearing on the motion to terminate parental rights was held on 7 November 2008. The trial court concluded that: (1) respondent had neglected the child, and there was a reasonable probability of repetition of the neglect; (2) respondent had willfully abandoned the child for at least six consecutive months immediately preceding the filing of the petition; (3) respondent's parental rights with respect to another child had previously been terminated involuntarily, and respondent lacked the ability or willingness to establish a safe home; and (4) it was in the best interests of the child that the parental rights of his mother be terminated. The order terminating respondent's parental rights was entered on 15 December 2008.
Respondent appeals.

II. Standard of Review
The termination of parental rights is a two-step process. In re Shepard, 162 N.C. App. 215, 221, 591 S.E.2d 1, 5 (citations omitted), disc. review denied, 358 N.C. 543, 599 S.E.2d 42 (2004). "During the initial adjudication phase of the trial, the petitioner seeking termination must show by clear, cogent, and convincing evidence that grounds exist to terminate parental rights." Id. (citations omitted). If the trial court determines that a ground for termination exists, the court moves to the disposition stage, where it must determine whether termination is in the best interest of the child. N.C. Gen. Stat. § 7B-1110(a) (2007). Upon review we consider, "based on the grounds found for termination, whether the trial court abused its discretion in finding termination to be in the best interest of the child." Shepard, 162 at 222, 591 S.E.2d at 6 (citing In re Nolen, 117 N.C. App. 693, 700, 453 S.E.2d 220, 225 (1995)).
III. Analysis
In her third argument, respondent contends that the trial court erred in finding and concluding that respondent's parental rights to Q.A.K. should be terminated based upon the prior termination of respondent's parental rights as to another child. We disagree.
A trial court may terminate parental rights upon finding that "[t]he parental rights of the parent with respect to another child of the parent have been terminated involuntarily by a court of competent jurisdiction and the parent lacks the ability or willingness to establish a safe home." N.C. Gen. Stat. § 7B-1111(a)(9) (2007). The trial court found:
8. On March 21, 2007, the parental rights of the mother were terminated in the child L.K.. . . . In the order terminating the mother's parental rights to L.K. the court made findings concerning the mother's mental illness and substance abuse and her failure to visit the child and failure to maintain communication with Durham DSS.
Respondent does not challenge this finding of fact. It is thus deemed to be supported by sufficient evidence and is binding on appeal. N.C.R. App. P. 28(b)(6); In re Humphrey, 156 N.C. App. 533, 540, 577 S.E.2d 421, 426 (2003) (citing In re Wilkerson, 57 N.C. App. 63, 65, 291 S.E.2d 182, 183 (1982)). Instead, respondent argues there was insufficient evidence to find that she lacks the ability or willingness to establish a safe home for Q.A.K.
At the adjudicatory stage of the proceedings, we determine "whether the trial court's findings of fact are based on clear, cogent, and convincing evidence and whether those findings support the trial court's conclusion that grounds for termination exist pursuant to N.C. Gen. Stat. § 7B-1111." In re C.W. & J.W., 182 N.C. App. 214, 219, 641 S.E.2d 725, 729 (2007) (citations omitted). As to respondent's ability or willingness to establish a safe home for Q.A.K., the trial court found:
12. The mother did not visit with her child after the child was removed from her care on February 27, 2008. She did not maintain contact and communication with Durham DSS between the disposition and the court's first review on July 8, 2008. Durham DSS made efforts to locate the mother and made ongoing efforts to work with other community agencies and staff at the Durham Detention Center.
13. Although the mother has had periods of incarceration between February 27, 2008 and the first review on July 8, 2008, even when she was not incarcerated, she did not visit with the child.
14. The matter was reviewed on July 8, 2008. The mother was incarcerated at the time of the review. At that time, the mother was not in compliance with any provision of the court order. The mother's visits were suspended until such time as she contacted Durham DSS and demonstrated she was in substance abuse treatment. Durham DSS was relieved of making reunification efforts. Otherwise, the disposition order continued in effect.
15. A permanency planning hearing was held on August 5, 2008. The mother was incarcerated at the time of the review. The court adopted a permanent plan of adoption and a concurrent plan of guardianship with a court approved caregiver. The prior order continued in effect.
. . .
16. The mother does not have the ability to provide a safe home for the child.
17. The mother has not demonstrated a willingness to provide a safe home for the child.
18. The mother is no closer to the child being returned to her care than she was on February 27, 2008. She has not effectively addressed her substance abuse. She has attended some Alcoholics Anonymous meetings and some Narcotics Anonymous meetings. She is incarcerated at this time, and she has had periods of incarceration throughout the child's life. She has not visited the child for months.
These findings of fact are supported by competent evidence, which establish that respondent did not visit with Q.A.K. after 27 February 2008, nor did she maintain contact with DSS. Social Worker Hawkins stated that respondent returned only one of her phone calls, on 23 April 2008. Hawkins further testified that respondent did not have stable housing. Respondent was detained at the Durham Detention Center and other correctional facilities on and off after Q.A.K. was removed, including being incarcerated at the time of the termination hearing. Respondent did not receive a psychological evaluation, and other than attending Narcotics Anonymous and Alcoholic Anonymous while incarcerated, she did not receive substance abuse treatment. A substance abuse treatment program was secured for respondent, but she did not attend.
Based on the foregoing evidence, we hold there was clear, cogent, and convincing evidence supporting the trial court's finding that respondent lacked the ability or willingness to establish a safe home for Q.A.K. Moreover, the findings are sufficient to support the trial court's conclusion that grounds exist to terminate respondent's parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(9). A finding of any one of the grounds enumerated in N.C. Gen. Stat. § 7B-1111 is sufficient to support termination of respondent's parental rights. In re Yocum, 158 N.C. App. 198, 204, 580 S.E.2d 399, 403-04 (2003), aff'd, 357 N.C. 568, 597 S.E.2d 674 (2003).
Having concluded that the trial court properly found grounds to terminate respondent's parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(9), we need not address the remaining grounds. See In re Clark, 159 N.C. App. 75, 84, 582 S.E.2d 657, 663 (2003) (stating that when this Court determines the trial court properly concluded one ground existed to support the termination of parental rights, we need not address the remaining grounds). In addition, although respondent has not challenged the dispositional ruling that termination of her parental rights is in the best interests of Q.A.K., we find no abuse of discretion by the trial court. Accordingly, we affirm the order of the trial court.
AFFIRMED.
Judges WYNN and BRYANT concur.
Report per Rule 30(e).